| | |
|---|---|
| HALSCOTT MEGARO, P.A., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HENRY MCCOLLUM, LEON BROWN, )<br>RAYMOND TARLTON, as guardian for )<br>Henry McCollum and individually, DUANE )<br>GILLIAM, as guardian for Leon Brown and )<br>individually, KIMBERLY PINCHBECK, as )<br>guardian for the estate of Henry McCollum )<br>and individually, )<br>)<br>Defendants. ) | O R D E R |

This cause comes before the Court on defendants' motion to dismiss, plaintiff's cross-motion to recuse, and plaintiff's motion to strike defendants' reply to their motion to dismiss. The appropriate responses and replies have been filed, or the time for doing so has expired, and the matters are ripe for ruling. For the reasons that follow, defendants' motion to dismiss is granted and plaintiff's motions to recuse and to strike are denied.

## BACKGROUND

On May 25, 2021, plaintiff instituted this action by filing a complaint against defendants in the Ninth Judicial Circuit Court in and for Orange County, Florida. [DE 1-2]. The complaint alleges as follows. Plaintiff is an interstate law firm of which attorney Patrick Michael Megaro was at all relevant times a senior partner. *Id.* ¶ 11. Plaintiff, by and through Megaro, who was at the relevant time admitted to practice in North Carolina, and attorney Jaime Halscott, represented defendants Henry McCollum and Leon Brown from approximately March 2015 until they were

relieved. *Id.* ¶ 17. Plaintiff's representation of defendants McCollum and Brown was based on a retainer agreement (hereinafter retainer agreement) which was executed on or about March 1, 2015, by Megaro and defendants McCollum and Brown as well as by Geraldine Brown Ransom, as attorney-in-fact. *Id.* ¶¶ 13-14; *see also* [DE 8-4]. The retainer agreement was "a standard contingency fee agreement with a graduated scale based on the amount recovered and the state at which the case resolved." *Id.* ¶ 16. Pursuant to the retainer agreement, plaintiff, Megaro, and Halscott represented McCollum and Brown in seeking pardons of actual innocence from the Governor of North Carolina, in seeking statutory compensation from the North Carolina Industrial Commission, and in a civil rights action filed in this district pursuant to 42 U.S.C. § 1983 against various parties over which the undersigned presided. *Id.* ¶ 19; No. 5:15-CV-451-BO (E.D.N.C.) (herein after civil rights action).

After McCollum and Brown received a pardon of innocence from the Governor of North Carolina, plaintiff and attorneys of record Megaro and Halscott met with the North Carolina Industrial Commission, after which defendants McCollum and Brown each received the maximum statutory compensation permitted, $750,000; this amount was deposited into plaintiff's trust account and distributed to McCollum and Brown "minus costs and fees in accordance with the signed retainer agreement". *Id.* ¶¶ 22-25. Following the Industrial Commission's award, Megaro petitioned for appointment of a guardian on behalf of Brown in Cumberland County, North Carolina. *Id.* ¶ 26. Geraldine Brown Ransom was appointed as Brown's guardian but was later removed and replaced by defendant Duane Gilliam. *Id.* ¶¶ 27-28. Plaintiff alleges that Gilliam "ratified Plaintiff law firm's representation, and continued with Plaintiff law firm's representation of Brown." *Id.* ¶ 29.

2

Plaintiff and attorneys Megaro and Halscott then represented McCollum and Brown in the civil rights action. Plaintiff and attorneys Megaro and Halscott handled the civil rights action on McCollum and Brown's behalf through summary judgment briefing. *Id.* ¶¶ 35-36. Plaintiff, Megaro, and Halscott negotiated a settlement in the civil rights action of $1,000,000 with the Town of Red Springs. *Id.* ¶ 39. In May 2017, the undersigned appointed defendant Raymond Tarlton as guardian ad litem for Henry McCollum in the civil rights action. *Id.* ¶ 38. Tarlton, Megaro, and Halscott engaged the services of defendant Kimberly Pinchbeck to serve as a limited guardian and to set up a trust for McCollum. *Id.* ¶ 43. Without plaintiff's, Megaro's, or Halscott's knowledge, Tarlton had Pinchbeck appointed as guardian of the estate for McCollum. *Id.* ¶ 44-45. Pinchbeck then informed plaintiff, Megaro, and Halscott "that they were being relieved, and a new law firm would represent McCollum going forward". *Id.* ¶ 46. Defendants Brown and Gilliam subsequently relieved plaintiff, Megaro, and Halscott as well. *Id.* ¶ 51. Defendants went to trial in the civil rights action in May 2021 and were awarded $75,000,000 in compensatory and punitive damages against the remaining civil rights action defendants. *Id.* ¶ 52.

Plaintiff alleges that it and its attorneys and staff spent thousands of hours and vast sums of money in representing defendants and that defendants have not paid any fees or costs arising from the civil rights action as is contemplated by the retainer agreement. *Id.* ¶¶ 48-49. The complaint alleges three claims for relief: breach of contract against defendants Brown and Gilliam; quantum meruit against defendants Brown, Gilliam, McCollum, Tarlton, and Pinchbeck; and unjust enrichment against defendants Brown, Gilliam, McCollum, Tarlton, and Pinchbeck.

On September 21, 2021, defendants removed the state court action to the United States District Court for the Middle District of Florida on the basis of its diversity jurisdiction. [DE 1].

By order entered November 16, 2021, the matter was transferred to this district due to improper venue. [DE 31].

## DISCUSSION

A. Recusal

The Court considers at the outset plaintiff's cross-motion for recusal of the undersigned.

28 U.S.C. § 455(a) provides that a judge shall disqualify himself in any proceeding in which his impartiality may reasonably be questioned. "The proper test to be applied is whether another with knowledge of all of the circumstances might reasonably question the judge's impartiality . . . ." *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 551 (1994) (citation omitted). Neither "opinions held by judges as a result of what they learned in earlier proceedings" nor opinions "properly and necessarily acquired in the course of the proceedings" have been found to be the basis of bias or prejudice that might require recusal. *Id.* Indeed, even "comments that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases" will support recusal *only* when they reveal that the judge's opinion is derived from an extrajudicial source or if they reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555.

Plaintiff has failed to identify any opinion derived from an extrajudicial source or any comment that reveals a high degree of favoritism or antagonism so as to make it impossible for the undersigned to render a fair judgment. Rather, plaintiff relies primarily on rulings and alleged statements, though without identifying any statements with specificity, made by the undersigned during the course of the civil rights action. Plaintiff has, then, failed to identify facts which would satisfy the showing that a reasonable person with knowledge of all the circumstances would

4

question the undersigned's impartiality. Plaintiff additionally relies on defendants' request to transfer this case to this district, the Court's treatment of plaintiff's motion for extension of time, which it granted, as well as alleged statements by third parties. None of these bear on whether the undersigned is impartial in this case. Plaintiff's motion requesting recusal of the undersigned is denied.

B. Motion to dismiss

Defendants seek dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal alteration and citation omitted). The Court may also consider and take judicial notice of information in the public record when reviewing a motion to dismiss pursuant to Rule 12(b)(6) without converting the motion to one for summary judgment. *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004). It may further consider documents relied upon and integral to the complaint so long as there is no dispute about the authenticity of the documents. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Defendants argue first that collateral estoppel, or issue preclusion, bars plaintiff's breach of contract claim. A claim for breach of contract under North Carolina law requires a showing first

of the existence of a valid contract and second of breach of the terms of the contract. *Poor v. Hill*, 138 N.C. App. 19, 26 (2000).[1] Prior to the commencement of this action, Megaro was disciplined by the North Carolina State Bar for his conduct in representing McCollum and Brown. Specifically, on April 27, 2021, following a contested evidentiary hearing at which Megaro was represented by counsel, a panel of the North Carolina State Bar Disciplinary Hearing Commission found that, among other things, the retainer agreement at issue in this case was invalid because McCollum and Brown lacked the capacity to enter into a representation agreement with Megaro. [DE 1-1] North Carolina State Bar Order 18 DHC 41(N.C. Bar Order), Findings of Fact ¶ 128. As a result of Megaro's conduct, which is recounted in additional detail below, Megaro's license to practice law in North Carolina was suspended for five years and he was ordered to return $250,000 to McCollum and Brown. *Id.* at Order ¶¶ 1, 5. Megaro has appealed this order to the North Carolina Court of Appeals. *See* [DE 50 ¶ 42]; *N.C. State Bar v. Megaro*, No. COA22-135 (N.C. Court of Appeals Feb. 15, 2022).

Although it is an affirmative defense, *see* Fed. R. Civ. P. 8(c), a court may consider whether collateral estoppel bars a claim at the 12(b)(6) stage. *See Weinberger v. Tucker*, 510 F.3d 486, 490 (4th Cir. 2007); *In re Lee*, 461 F. App'x 227, 234 (4th Cir. 2012). Collateral estoppel "provides that once a court of competent jurisdiction actually and necessarily determines an issue, that determination remains conclusive in subsequent suits, based on a different cause of action but involving the same parties, or privies, to the previous litigation." *Id.* at 491.

---

[1] Where, as here, a federal court sits in diversity, it applies substantive of law of state in which it sits. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004). Additionally, where, as here, a matter has been transferred pursuant to the provisions of 28 U.S.C. § 1406, [DE 31 p. 8], the transferee court applies the law of the state in which it sits. *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 526 (4th Cir. 1987). Further, plaintiff has not argued in response to the instant motion that North Carolina law does not apply to its claims.

6

Where, as here, the determination at issue arises from an administrative proceeding, courts apply a two-prong test to determine whether the administrative body's findings are given preclusive effect. First, the court must determine whether the administrative body was acting in a judicial capacity when it resolved disputed issues of fact and whether there was a full and fair opportunity to litigate the issues. If the first prong is met, the court must determine whether the state court would give preclusive effect to the administrative decision. *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 191 (4th Cir. 1994) (citing *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220 (1986)). If the administrative decision fails the first prong of the *Elliott* test, even where a state court would give the decision preclusive effect, a federal court need not do so. *Hall* 31 F.3d at 191; *see also Howell v. Marion Sch. Dist. One*, No. CIV.A. 4:07-CV-1811R, 2009 WL 764445, at *5 (D.S.C. Mar. 19, 2009).

The North Carolina State Bar Disciplinary Hearing Commission (DHC) acted in a judicial capacity when it entered its order imposing discipline on Megaro. There is no suggestion that the DHC panel was not impartial. *See Hall* 31 F.3d at 192. The hearing was public, Megaro was entitled to and represented by counsel at the hearing, and he was provided the opportunity to testify. *See* N.C. Bar Order Findings of Fact ¶¶ 16-17; *see also* 27 N.C. Admin. Code 1B.0114-116. The DHC has the power to subpoena witnesses and the rules of evidence applicable in the North Carolina Superior Court govern the admissibility of evidence. 27 N.C Admin. Code 1B.0114(f)-(g). The standard by which the DHC panel must find facts is "clear, cogent, and convincing". *Id.* 1B.0116(c). Indeed, DHC proceedings are to "conform as nearly as practicable with the requirements of the North Carolina Rules of Civil Procedure and for trial of nonjury civil cases in the superior courts," *id.* 1B.0114(a), and there is a right to appeal a final order of the DHC to the North Carolina Court of Appeals. N.C. Gen. Stat. § 84-28(h). For these reasons, several federal

courts have determined in other contexts that proceedings before the DHC are judicial in nature, and this Court has been presented no grounds on which to determine otherwise in this case. *See, e.g., Sutton v. N. Carolina State Bar,* No. 5:14-CV-243-BR, 2014 WL 4546017, at *6 (E.D.N.C. Sept. 12, 2014); *McGee v. N. Carolina State Bar*, No. 5:04-CV-860-FL(1), 2005 WL 5404088, at *3 (E.D.N.C. June 1, 2005).

There was further a full and fair opportunity to litigate the issues. A full and fair opportunity to litigate is typically found where a party "had the incentive to litigate vigorously in the prior proceeding, and was able in that proceeding to examine the evidence against him, present his own evidence, cross-examine witnesses, be represented by competent counsel, and otherwise enjoy the protections of due process as relates to the issue under dispute." *S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 780 (D. Md. 2009) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332-333) (1979)). There is no suggestion that Megaro did not have the incentive to litigate the discipline complaint vigorously and, as discussed above, the North Carolina State Bar disciplinary process provides for procedural protections consistent with a nonjury trial before a state superior court. Accordingly, the Court finds there was a full and fair opportunity to litigate the issues.

North Carolina courts would also give preclusive effect to the DHC decision.

> In order to assert collateral estoppel under North Carolina law, a party must show that the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are the same as, or in privity with, the parties to the earlier action. North Carolina courts have abandoned the final requirement of "mutuality of estoppel" for the defensive use of collateral estoppel, so long as the party seeking to reopen the issue "had a full and fair opportunity to litigate" the matter in the previous action.

*Sartin v. Macik*, 535 F.3d 284, 287–88 (4th Cir. 2008) (citing *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 349 S.E. 2d 552 ,557, 560 (1986)).

Whether the retainer agreement is an enforceable contract was an issue actually litigated before the DHC and was necessary to that administrative body's judgment. *See* N.C. Bar Order Findings of Fact ¶¶ 28-37; Conclusions of Law ¶ 2(k); Findings of Fact Regarding Discipline ¶¶ 3-6. The DHC determined, by clear, cogent, and convincing evidence, that McCollum and Brown lacked the capacity to enter into representation agreements with Megaro. *Id.* Findings of Fact ¶ 128. This finding was necessary to the DHC determination to impose discipline. *See id.* Findings of Fact Regarding Discipline ¶¶ 3-6. The DHC's order also constitutes a final order, despite Megaro having noticed an appeal to the North Carolina Court of Appeals. *Miyares v. Forsyth Cty.*, 165 N.C. App. 543 (2004) (unpublished table decision); *see also Follum v. N. Carolina State Univ.*, No. 5:08-CV-526-FL, 2009 WL 2869927, at *3 (E.D.N.C. Sept. 2, 2009).

Plaintiff, the law firm, is also in privity with Megaro, a partner in the plaintiff law firm who was the subject of the state bar disciplinary proceeding. "[P]rivity for purposes of *res judicata* and collateral estoppel 'denotes a mutual or successive relationship to the same rights of property.'" *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 417 (1996) (internal quotation and citation omitted). That is plainly the case here. The retainer agreement at issue and relied upon in the instant complaint was signed by Megaro on behalf of the plaintiff law firm. [DE 8-4]. The North Carolina State Bar proceedings against Megaro arose out of his actions related to and arising from his legal representation of McCollum and Brown pursuant to the retainer agreement and as a member of the plaintiff law firm. There is no credible argument that the plaintiff law firm and Megaro are not in privity. The fact that the plaintiff law firm or Megaro's law partner, counsel for the plaintiff law firm in this case, were not the subject of the North Carolina State Bar disciplinary proceedings is of no moment.

9

Accordingly, the Court determines that North Carolina would give preclusive effect to the DHC's order and the issues determined therein. As the DHC has determined that the retainer agreement which is the subject of plaintiff's breach of contract claim was invalid, that finding has preclusive effect on this matter and plaintiff cannot re-litigate the issue. The motion to dismiss the breach of contract claim is therefore granted as plaintiff cannot demonstrate the first element of the claim – that is, the existence of a valid contract.

Defendants next move to dismiss the quasi-contract claims – unjust enrichment and quantum meruit – based upon the equitable doctrines of laches and unclean hands. The Court agrees that both doctrines are applicable in this case.

"Unjust enrichment is a legal term characterizing the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 179 (2009) (internal quotation and citation omitted). It is a claim based in equity under a quasi-contract or a contract implied in law. *Butler v. Butler*, 239 N.C. App. 1, 7 (2015). To recover on a claim for unjust enrichment, the plaintiff must show that it conferred a benefit on another party, which was consciously accepted by the other party as a benefit, and that the benefit was not gratuitously conferred. *Booe v. Shadrick*, 322 N.C. 567, 570 (1988). Quantum meruit is similarly an equitable remedy applicable to prevent unjust enrichment based upon a quasi-contract or one implied in law. *Whitfield v. Gilchrist*, 348 N.C. 39, 42 (1998). It also requires a plaintiff to demonstrate that "(1) services were rendered to the defendant; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *Wing v. Town of Landis*, 165 N.C. App. 691, 693 (2004).

Laches is an equitable defense which can limit or bar certain claims. *Teachey v. Gurley*, 199 S.E. 83, 88 (N.C. 1938). Indeed, North Carolina courts have "long recognized that equity will not afford relief to those who sleep upon their rights . . .." *Butler*, 239 N.C. App. at 7–8 (internal quotation and citation omitted). North Carolina courts apply laches to bar a claim when, first, a delay in time resulted in a change in the condition of the property or in the relations of the parties and, second, the delay was unreasonable and worked to the disadvantage or prejudice of the party seeking to invoke the doctrine. *MMR Holdings, LLC v. City of Charlotte*, 148 N.C. App. 208, 209-10 (2001). The passage of time alone will not, however, support a finding of laches. *Id.* Laches, like other affirmative defenses, may be raised at the motion to dismiss stage where there are sufficient facts on which the court may rely to determine whether the defense applies. *See Acosta v. Jardon & Howard Techs., Inc.*, No. 4:18-CV-16-D, 2018 WL 5779506, at *2 (E.D.N.C. Nov. 2, 2018). As discussed above, the Court may consider matters in the public record without converting the motion to dismiss to one for summary judgment.

Laches appropriately prevents any equitable recovery for attorney fees and costs arising out of the settlement with the Town of Red Springs in the civil rights action. This Court approved the settlement with the Town of Red Springs and related defendants by order entered December 18, 2017. No. 5:15-CV-451-BO [DE 253] (E.D.N.C. Dec. 18, 2017). The Court expressly held that it would "take up the issue of attorneys' fees for plaintiffs' counsel arising out of the settlement with the Town of Red Springs defendants in a separate order after the filing of a motion by counsel." *Id.*; *see also* Local Civil Rule 17.1(c) (attorney fees paid from settlement with an incompetent party must be approved by the court). Megaro, and by extension plaintiff law firm, were not replaced by substitute counsel pursuant to a court order until May 21, 2018. *Id.* [DE 291] (E.D.N.C. May 21, 2018). No motion for attorney fees was filed by Megaro or plaintiff in the civil

11

rights action, either before or after entry of judgment on May 14, 2021, or the amended judgment on attorney fees entered November 5, 2021.

Here, plaintiff's delay resulted in a change in the condition of the property. Defendants McCollum and Brown, and their guardians who manage their affairs, have relied on the funds from the Town of Red Springs settlement for now more than four years. Plaintiff's delay in seeking fees and costs arising under this settlement was clearly unreasonable and it would prejudice McCollum and Brown were the Court to order them to pay any amount in attorney fees and costs to plaintiff at this stage.

It cannot be disputed that "an attorney who has provided legal service pursuant to a contingency fee agreement and [was] then fired has a viable claim in North Carolina in quantum meruit against the former client or its subsequent representative." *Guess v. Parrott*, 160 N.C. App. 325, 331 (2003). However, North Carolina courts have also "long recognized that a party seeking equitable relief . . . must come before the court with 'clean hands'" and that "[t]hose who seek equitable remedies must do equity[.]" *Kennedy v. Kennedy*, 160 N.C. App. 1, 15 (2003). The doctrine of unclean hands "denies equitable relief only to litigants who have acted in bad faith, or whose conduct has been dishonest, deceitful, fraudulent, unfair, or overreaching in regard to the transaction in controversy." *Collins v. Davis*, 68 N.C. App. 588, 592 (1984).

The facts found by the DHC, which have preclusive effect in this action, plainly establish that Megaro, and by extension his privy, plaintiff law firm, engaged in conduct that was dishonest, deceitful, fraudulent, unfair, and overreaching in regard to his representation of McCollum and Brown pursuant to the retainer agreement. Specifically, the DHC panel found that Megaro "engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation . . ." by, among other things, "entering into a representation agreement with his clients when he knew they did not have

the capacity to understand the agreement[.]" N.C. Bar Order, Conclusions of Law ¶ 2. Although North Carolina courts have held that mere technical violations of the Rules of Professional Conduct will not defeat a claim for attorney fees under quantum meruit, *see Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 619–20 (2012), "an attorney's failure to comply with the Rules of Professional Conduct can indeed function as a bar to recovery in a subsequent action for attorney fees." *L. Offs. of Peter H. Priest, PLLC v. Coch*, 244 N.C. App. 53, 67 (2015). Here, there is no mere technical violation of the North Carolina Rules of Professional Conduct. The DHC panel determined in imposing its discipline that Megaro engaged in both a pattern of misconduct and a wide variety of Rule violations and that Megaro had manipulated, deceived, and exploited McCollum and Brown, the same parties from whom Megaro's law firm now seeks reimbursement. N.C. Bar Order, Findings of Fact Regarding Discipline ¶¶ 3-4. Moreover, the DHC panel expressly found that Megaro had "intentionally engaged in conduct that foreseeably undermines public faith in the legal system by deceiving and exploiting clients with diminished intellectual capacity in a case that had already drawn public attention because it involved the mistreatment of vulnerable people." *Id.* ¶ 13.[2]

At bottom, the facts found by the DHC panel demonstrate that, in light of the conduct of Megaro prior to and throughout his participation in the underlying civil rights action, plaintiff comes to this Court seeking attorney fees and costs arising out of the civil rights action with hands that are far from clean. An award under a theory of quantum meruit or unjust enrichment would be simply inequitable under these circumstances.

---

[2] The N.C. Bar Order specifically recounts the multiple ways in which Megaro violated the North Carolina Rules of Professional Conduct, deceived McCollum and Brown, and undermined the public's trust in the legal profession. The Court need not recite each of those findings here, but notes that in determining that plaintiff comes to court with unclean hands it has relied on the N.C. Bar order and its factual findings in their entirety.

13

The Court nonetheless addresses several of defendants' remaining arguments in support of dismissal. First, as a guardian ad litem appointed by this Court in the civil rights action, defendant Tarlton is absolutely immune from all claims arising out of the performance of his duties as guardian ad litem as he is entitled to quasi-judicial immunity. *Dalenko v. Wake Cty. Dep't of Hum. Servs.*, 157 N.C. App. 49, 57-58 (2003). The various guardian defendants, Tarlton, Gilliam, and Pinchbeck, are further entitled to dismissal of any equitable claim against them in their individual capacities as any representation of McCollum and Brown by plaintiff conferred a benefit on McCollum and Brown, not their guardians. If any benefit was conferred on the guardians, it would be in their official not individual capacities. Finally, any claim for breach of contract against Gilliam in his individual capacity based upon plaintiff's allegation that Gilliam ratified the retainer agreement after he was appointed as guardian for Brown fails. Plaintiff, either in the complaint or in response to the instant motion, has advanced no legal theory which would support a finding that Gilliam can be held personally liable under the retainer agreement. Any alleged ratification of the agreement would have fallen under Gilliam's duties as guardian of Brown and in his official capacity. Moreover, in an analogous context, the North Carolina Supreme Court has held that "[i]n the absence of all agreement, express or implied, to be personally bound, there can be no case, we apprehend, in which an agent has been held responsible who has not been guilty of fraud either actual or constructive." *Pike v. Wachovia Bank & Tr. Co.*, 274 N.C. 1, 13 (1968). Plaintiff does not allege that Gilliam engaged in any fraud, and thus the Court discerns no basis upon which to hold Gilliam personally liable on any contract between plaintiff and Brown.

C. Motion to strike

Finally, plaintiff seeks to strike defendants' reply brief as violative of this Court's Local Civil Rules. The Local Civil Rules are designed to facilitate a just, speedy, and inexpensive

14

outcome in civil cases. Local Civil Rule 1.1. While reply briefs are disfavored in this district, the Court discerns no violation of its Local Rules within defendants' reply brief. *See* Local Civil Rule 7.1(g). The Court therefore, in its discretion, denies plaintiff's motion to strike.

## CONCLUSION

Accordingly, for the reasons outlined above, plaintiff's cross-motion for recusal [DE 50] is DENIED and plaintiff's motion to strike [DE 53] is DENIED.

Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [DE 45] is GRANTED.

The clerk is DIRECTED to enter judgment accordingly and close the case.

SO ORDERED, this ___day of May, 2022.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE